UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IMESH PERERA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID W. JENNINGS, et al.,<br><br>    Defendants. | Case No. 21-cv-04136-BLF<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |

Petitioner-Plaintiff Imesh Perera filed a petition for writ of habeas corpus and complaint for injunctive and declarative relief in this action on June 1, 2021 against Respondent-Defendants U.S. Immigration and Customs Enforcement ("ICE") San Francisco Field Office Director David W. Jennings, Acting ICE Director Tae D. Johnson, DHS Secretary Alejandro Mayorkas, and Attorney General Merrick Garland (collectively "Defendants"). ECF 1; Compl., ECF 18-2. Perera simultaneously filed a motion seeking a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. ECF 4; Mot., ECF 18-3. The Court ordered that notice be given to Defendants and held a motion hearing on June 10, 2021.

As set forth below, Perera's motion is GRANTED. Respondents-Defendants, and their agents and employees, are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue under the same terms as this temporary restraining order. The hearing on the Order to Show Cause will be held on July 15, 2021 at 9:00 am. Briefing shall be submitted as provided in the Order Granting Motion for Temporary Restraining Order.

**I.    BACKGROUND**

The declarations and associated exhibits of Judah Lakin and Scott Mossman establish the following facts. *See* Lakin Decl., ECF 1-1; Mossman Decl., ECF 18-1. Perera was born in Sri Lanka in 1990 to Marian and Prince Perera. Perera and his family came to the United States in 2002 based on his mother's H-1B visa. Mossman Decl. ¶ 4. Along with the rest of his family, Perera adjusted to lawful permanent resident status in 2007. *Id.* ¶ 5. His parents became U.S. citizens in 2012. *Id.* On May 21, 2010, Perera was convicted in the Superior Court of California, County of Placer, for transportation of a controlled substance in violation of California Health and Safety Code § 11379(a). *Id.* ¶ 6. On August 18, 2010, Mr. Perera and ten co-defendants were indicted on federal controlled substances charges in the U.S. District Court for the Eastern District of California. *Id.* On March 20, 2015, Perera pled guilty to conspiracy to distribute and possess with intent to distribute MDMA and BZP in violation of 21 U.S.C. §§ 846 and 841(a)(1). *Id.* ¶ 7. Because Perera had spent nearly five years in custody at that point, the court ordered him released at the time of the plea. *Id.* On September 10, 2015, the court sentenced Perera to 50 months with credit for time served and a term of supervised release of 36 months. *Id.*

The past six years have proved transformative for Perera. He has successfully completed probation and avoided further criminal arrests or charges. Perera Decl. ¶¶ 13-15; Lakin Decl. at Ex. F (Letter from Probation Officer). He has pursued a college education, studying real estate and business administration, while working full-time. Perera Decl. ¶ 16; Lakin Decl. at Ex. K (Sierra College Transcript), Ex. L (Letter from counselor at Sierra College), Ex. Q (Letter from program technician at Sierra College). He has climbed the ranks at Safeway, earning five promotions in four years and ultimately becoming a store director responsible for 130 employees. Perera Decl. ¶ 17-19. He has committed himself to spiritual development and devotion as well as his church community. Perera Decl. ¶¶ 13, 30; Lakin Decl. at Ex. C (Letter from Marian and Prince Perera); Lakin Decl. at Ex. M (Letter from Perera's Priest). He is engaged to a U.S. citizen, who is pregnant with their first child, a son. Lakin Decl. at Ex. D (Letter from Chloe Enriquez). He bought a home

so his son would have somewhere "safe and secure" to grow up. Perera Decl. ¶ 18. As Perera explains: "I now know that time is the one thing you can't get back and I have lived my life every day since being released from federal custody with that understanding." Perera Decl. ¶ 15.

On April 21, 2021, ICE took Perera into custody and initiated removal proceedings. Mossman Decl. ¶ 8. Since then, ICE has detained Perera at Golden State Annex, a private detention facility in McFarland, California. *Id*. ICE refused Perera the opportunity to post a bond for release from custody during the removal proceedings. *Id*. ¶¶ 8, 15. On May 25, 2021, Perera denied the charge of removability against him. *Id*. ¶ 13. If the immigration judge ultimately sustains the charge of removability, Perera intends to apply for withholding of removal to Sri Lanka pursuant to INA § 241(b)(3), 8 U.S.C. § 1231(b)(3) and the Convention Against Torture, and deferral of removal under the Convention Against Torture. *Id*. ¶ 14; *see also* Perera Decl. ¶ 31. In particular, country conditions research indicates that Sri Lankan government officials incite and acquiesce in violence against Christians. *Id*.

On June 1, 2021, Perera filed the petition, complaint, and instant motion for a temporary restraining order. ECF 1; ECF 4. The same day, the Court issued an order directing Defendants to respond to the motion and directing Perera to serve Defendants with notice of the order via email. *See* ECF 8. Plaintiff has confirmed service as authorized. ECF 9. On June 7, 2021, Defendants filed an opposition brief. Opp., ECF 20. On June 8, 2021, with permission of the Court, Perera filed a reply brief. Reply, ECF 22.

## II.     JURISDICTION

The Court first considers whether jurisdiction lies within this district. ICE is currently detaining Perera at the Golden State Annex facility in McFarland, CA. Golden State Annex is a private facility that falls within the area of responsibility of the San Francisco Field Office of ICE Enforcement and Removal Operations. Respondent-Defendant Jennings is the Field Office Director of ICE's San Francisco Field Office. Compl. ¶¶ 12, 16, 39.

In *Rumsfeld v. Padilla,* the Supreme Court applied the "immediate custodian rule" to a habeas petition filed by a U.S. citizen detained in military custody in South Carolina. 542 U.S. 430-432 (2004). The immediate custodian rule is the long-held "default rule" that the proper respondent to a habeas petition challenging present physical confinement "is the warden of the facility where [a] prisoner is being held, not the Attorney General or some other remote supervisory official." *Id*. at 435–39. *Padilla* refused to decide who the proper respondent is in the immigration detention context, however.

"Courts in this district repeatedly have held, both before and since *Lopez-Marroquin*,[1] that *Padilla* does not extend to cases such as this one where the immediate custodian lacks any actual authority over the immigrant detainee." *Domingo v. Barr*, No. 20-CV-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020). This Court concurs with the approach taken by Judge Yvonne Gonzalez Rogers in *Domingo* as well as other courts in and beyond this district. S*ee, e.g., Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *3-4 (N.D. Cal. May 27, 2020); *Zepeda Rivas v. Jennings*, No. 20-CV-02731-VC, 2020 WL 2059848, at *2 (N.D. Cal. April 29, 2020); *Rodriguez Sanchez v. Decker*, No. 18-CV-8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017). As such, this Court has subject matter jurisdiction and may grant relief pursuant to 28 U.S.C. § 2241.

### III. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323

---

[1] In *Lopez-Marroquin v. Barr*, the Ninth Circuit issued an order in which it transferred a habeas petition to immigration detention to the United States District Court for the Southern District of California. No. 18-72922, 2020 WL 1808002 (9th Cir. Apr. 9, 2020). The paragraph-long order cited to *Padilla*, but did not offer any facts about the petition, which was originally filed as an emergency motion to remand pursuant to the All Writs Act. *Id*.

(N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV.     DISCUSSION**

**A. Analysis**

**1. Likelihood of Success on the Merits**

The Court begins its analysis by considering Perera's showing on the first *Winter* factor, likelihood of success on the merits. Perera argues that 8 U.S.C. § 1226(c), as applied to him, is unconstitutional under the Due Process Clause. Mot. at 11-18. The Due Process Clause of the Fifth Amendment to the United States Constitution forbids the government from depriving a person of life, liberty, or property without due process of law. U.S. Const. Amend. V. The protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). 28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." This includes claims by non-citizens challenging the constitutionality of their detention without bail. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Detention violates due process absent "adequate procedural protections" or "special justification[s]" sufficient to outweigh one's "'constitutionally protected interest in

avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

At issue here is Perera's detention under 8 U.S.C. § 1226(c). Federal immigration law authorizes DHS to arrest and initially detain an alien who has entered the United States and is believed to be removable. 8 U.S.C. § 1226(a). Certain classes of non-citizens are subject to mandatory detention and may not, under the text of § 1226(c), be released until the removal proceedings conclude. *Jennings v. Rodriguez*, 138 S. Ct. 830, 837-38 (2018). For example, non-citizens who have committed certain crimes of "moral turpitude" are subject to mandatory detention. 8 U.S.C. §§ 1226(c), 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude ... is deportable.").

Courts routinely review as-applied constitutional challenges to § 1226(c) detention. *See, e.g., Romero Romero v. Wolf,* No. 20-CV-08031-TSH, 2021 WL 254435, at *2 (N.D. Cal. Jan. 26, 2021); *Arizmendi v. Kelly,* No. CV-17-4791-JAT (DMF), 2018 WL 3912279, at *4 (D. Ariz. July 23, 2018)*, report and recommendation adopted,* No. CV-17-04791-PHX-JAT, 2018 WL 3872228 (D. Ariz. Aug. 15, 2018); *Rodriguez v. Barr,* 488 F. Supp. 3d 29, 37 (W.D.N.Y. 2020); *Martinez-Done v. Decker*, 56 F. Supp. 3d 535 (S.D.N.Y. 2014); *see also Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."). A lawful permanent resident detained under § 1226(c) "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified"—such as if there were "an unreasonable delay by the [government] in pursuing and completing deportation proceedings." *Demore*, 538 U.S. at 532, (Kennedy, J., concurring) (citations omitted); *see also Preap*, 139 S. Ct. at 982, 985 (Section 1226(c) "creates serious constitutional problems" by denying a bond hearing to a noncitizen "who committed a crime many years before and has since reformed, living productively in a community" (Breyer, J., dissenting)). In this case,

6

review is prompted by the fact that ICE delayed Perera's detention for six years, three years of which he was on federal supervised release, and thus his whereabouts were continuously known to the government.

In sum, the Court must decide whether § 1226(c), as applied here, violates Perera's Fifth Amendment procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). Under *Mathews*, the "specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335. The Court finds that the *Mathews* factors unquestionably weigh in favor of Perera.[2]

First, the main private interest at stake in the instant matter is Perera's "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Perera has an overwhelming interest here—regardless of the length of his immigration detention—because "any length of detention implicates the same" fundamental rights. *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020).

Second, the risk of an erroneous deprivation is substantial. Put another way, the value of providing Perera with a hearing is high. *Rajnish*, 2020 WL 7626414, at *9. While it is not the

---

[2] Acknowledging that Perera bears the burden of proving a TRO should issue, the Court nonetheless highlights that Defendants' discussion of *Mathews* was limited to a single footnote. Opp. Br. at 17, fn. 3. In that footnote, the Defendants' state only that *Mathews* in inapplicable here because Perera's detention is constitutional and mandatory. *Id*. But this contention ignores that Perera is making an *as applied* challenge to his detention, which *Preap* explicitly permits. *Preap*, 139 S. Ct. at 972.

province of this Court to make a finding as to whether Perera is a flight risk or poses a danger to the community, the Court determines that the record is abound with evidence that would support such a finding by the immigration judge ("IJ"). Perera has submitted evidence showing his rehabilitation since incarceration. After spending five years incarcerated for a crime he committed as a teenager, he has completed probation and avoided further criminal arrests or charges. Perera Decl. ¶¶ 13-15; Letter from Probation Officer. Beyond that, he has committed himself to his education, his career, his church, and his growing family. Perera Decl. ¶ 13, 15-19, 30; Sierra College Transcript; Letter from counselor at Sierra College; Letter from program technician at Sierra College; Letter from Marian and Prince Perera; Letter from Perera's Priest; Letter from Chloe Enriquez; *see also Preap*, 139 S. Ct. at 982 (emphasizing the constitutional concern implicated by denying a non-citizen a bond hearing "who committed a crime many years before and has since reformed, living productively in a community"). However, to date, no neutral decisionmaker has considered and weighed this evidence. The IJ declined to reconsider ICE's detention decision, accepting ICE's argument that the IJ lacked authority under § 1226(c). Mossman Decl. ¶¶ 15-16. Perera's subsequent release request to ICE on May 25, 2021 was apparently summarily denied by the same ICE employees without consideration of any of Perera's ample evidence of his rehabilitation and roots in the community. Lakin Decl. ¶¶ 5-7. On this record, the risk of an erroneous decision is substantial absent a neutral decisionmaker's review. *See Rodriguez*, 488 F. Supp. 3d at 42 (finding significant risk of erroneous deprivation where petitioner had to prove to a DHS official, as opposed to a neutral decisionmaker, that he did not pose a danger or present a flight risk). That there is no remotely certain end in sight to Perera's custody only raises the risk of erroneous deprivation.

Third, the government's interest is low. The government certainly has an interest "in efficient administration of the immigration laws at the border," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), and in the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *Mathews*, 424 U.S. at 335. But the Court emphasizes that the interest at stake is not

8

whether the government may detain Perera, but whether they may do so without providing him an individualized bond hearing. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 765, 777 (N.D. Cal 2019) ("the governmental issue at stake in this motion is the ability to detain Petitioner *without providing him with [a] bond hearing*, not whether the government may continue to detain him."(emphasis in original)); *see also Zerezghi v. USCIS*, 955 F.3d 802, 810 (9th Cir. 2020) (explaining that while the government's general interest in immigration enforcement is substantial, the third *Mathews* factor focuses on its specific interest in the procedures it is using for enforcement rather than on the government's general interest). Requiring the government to provide Perera with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The government's interest in denying Perera an individualized bond hearing is further diluted by the fact that it waited six years to detain him. ICE was aware of Perera's potential removability as early as 2010, and completed paperwork to complete a removal case against him in 2017. Yet the government chose not to initiate proceedings against Perera until April 2021. This time lapse significantly undermines the government's interest in mandatorily detaining him. *See* Opp. at 20 (suggesting that the government has a strong interest in the quick execution of removal orders).

Balancing the *Mathews* factors, it is clear that Perera is likely to succeed in establishing his due process right to an individualized bond hearing. Perera's interest is grave, as his fundamental rights are implicated. A hearing would serve a valuable purpose in combatting any erroneous deprivation of Perera's constitutional rights. And the government's interest is not seriously undermined, as the relief Perera requests will still allow the government ample opportunity to demonstrate that Perera's detention is justified. In sum, the Court finds that Perera is likely to

establish that § 1226(c) is unconstitutional as applied to him, and that his continued detention, without an individualized bond hearing, violates the Due Process Clause.

### 2. Irreparable Harm

The Court finds that Perera will face irreparable harm absent relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because Perera is likely to succeed on the merits of his due process claim, he has "carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The Ninth Circuit has highlighted the irreparable harms imposed on anyone subject to immigration detention, such as "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id*. And there is copious evidence in the record about the harm that Perera, in particular, will face, should he continue to be detained without the possibility of bond. First and foremost, any loss of liberty is fundamental and substantial. *See Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011). In Perera's case, his first child is due in a few months. Mot. at 6. Being absent for this once-in-a-lifetime occasion is his "worst nightmare," a "loss [he] will never be able to recover from," and "a moment [he] will never be able to get back." Perera Decl. ¶ 29. Perera also stands to lose his job as a store director at Safeway and, consequently, his home. *Id*. ¶¶ 19, 28. Finally, Perera's fiancé stands to face additional psychological harms. Perera Decl. ¶ 27; Letter from Chloe Enriquez; Lakin Decl. at Ex. CC (Letter from Dr. Amanda Lea Poe); *see Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (recognizing the severe economic hardship and psychological harm family members of detainees can face).

### 3. Balance of Equities and Public Interest

Finally, the balance of the equities and the public interest tip sharply in favor granting

injunctive relief. "When the government is a party, these last two [*Winter*] factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The balance of the equities weigh strongly in favor of granting Perera relief. As discussed at length above, Perera has a strong interest in an individualized bond hearing so he can exercise his rights under the Constitution and have the chance to abate the imminent harms described above. And granting relief would not deprive the government of the opportunity to prove to a neutral decisionmaker whether Perera poses a threat to the community or a flight risk such that detainment is necessary. Similarly, the public has a strong interest in upholding constitutional rights. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The public is also served by ensuring that the government does not expend its resources to detain individuals unnecessarily and without adequate process. *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

**B. Burden of Proof at Bond Hearing**

Perera contends that if the Court orders an individualized bond hearing, "the government should bear the burden at that hearing of proving by clear and convincing evidence that Mr. Perera poses a danger or flight risk to justify his continued detention." Mot. at 18. This Court agrees, and Defendants do not argue otherwise. The Ninth Circuit has held that "the government must prove by clear and convincing evidence that [a non-citizen] is a flight risk or a danger to the community to justify denial of bond." *Singh*, 638 F.3d at 1203. While the Ninth Circuit made this holding in the context of *Casas* hearings, the Court determines that the reasoning applies with equal force here. In particular, the Court finds that "it is improper to ask [Perera] to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." *Id.* at 1203-1204 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)); see also *Ixchop Perez v.*

11

*McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), *appeal dismissed sub nom. Perez v. McAleenan*, No. 20-15511, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that after *Jennings* where ... the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal marks and citation omitted)).

### C. Security

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted) (italics in original). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. District courts have routinely exercised their discretion to require no security in cases brought by incarcerated people. *See, e.g.*, *Jorge M.F.*, 2021 WL 783561, at * 4; *Vargas v. Jennings*, 2020 WL 5074312, at *5 (N.D. Cal. Aug. 23, 2021); *Orantes–Hernandez v. Smith*, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982). This Court does the same here.

### V. ORDER

The Court HOLDS as follows:

(1) Plaintiff's application for a TRO is GRANTED.

(2) Respondents-Defendants and their agents and employees are ENJOINED from continuing to detain Petitioner-Plaintiff for more than 7 days from the date of this order without a bond hearing at which the government bears the burden of justifying Petitioner-Plaintiff's detention, by clear and convincing evidence.

(3) This TRO is issued after notice and hearing. The Court SETS set the hearing for the preliminary injunction on July 15, 2021 at 9:00 am, or such later dates as the parties may request.

(4) The Temporary Restraining Order provisions set forth herein shall expire at 5:00 pm on July 15, 2021 unless before then Defendants consent, or the Court, for good cause, orders an extension.

(5) Defendants may file any papers in opposition to the issuance of a preliminary injunction no later than June 24, 2021.

(6) Perera may file any reply papers prior to the Show Cause hearing no later than July 1, 2021.

**IT IS SO ORDERED.**

Dated: June 11, 2021

_____
BETH LABSON FREEMAN
United States District Judge