United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| IMESH PERERA,<br><br>　　　　　　Petitioner–Plaintiff,<br><br>　　v.<br><br>DAVID W. JENNINGS, et al.,<br><br>　　　　　　Respondents–Defendants. | Case No.  21-cv-04136-BLF<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Re:  ECF No. 1] |

In this case, Petitioner–Plaintiff Imesh Perera has filed a writ of habeas corpus and complaint for injunctive and declaratory relief seeking to require Defendants David W. Jennings, Tae D. Johnson, Alejandro Mayorkas, and Merrick B. Garland to provide him with a bond hearing before a neutral decisionmaker after being taken into custody by Immigration and Customs Enforcement.  ECF No. 18-2 ("Pet.").[1]  After ICE detained Perera on April 21, 2021—nearly six years after he was released from federal custody—and denied him a bond hearing, this Court granted Perera's motion for a temporary restraining order and enjoined ICE from detaining him for more than seven additional days without a bond hearing at which ICE was required to justify Perera's detention by clear and convincing evidence.  ECF No. 40 ("TRO").  After that bond hearing occurred, Perera was released on bond with conditions.

Now before the Court is adjudication of the full merits of Perera's petition.  Respondents have filed a return (ECF No. 40 ("Ret.")), and Perera has filed a traverse (ECF No. 40 ("Trav.")) in which he asks the Court to "affirm that the bond hearing it previously ordered for [Perera] was required by due process."  Trav. at 13.  The Court held a hearing on the petition on March 17,

---

[1] The Court analyzes Perera's corrected Petition, filed on June 4, 2021.

United States District Court
Northern District of California

1    2022.  ECF No. 50.  For the reasons discussed on the record and explained below, the Court

2    GRANTS Perera's petition for a writ of habeas corpus.

3    **I.      BACKGROUND**

4          **A.      Perera's Upbringing and Criminal Charges**

5           Petitioner–Plaintiff Imesh Perera was born in Sri Lanka in 1990 to parents Marian and

6    Prince Perera.  Declaration of Judah Lakin, ECF No. 1-1 ("Lakin Decl."), Ex. B ("Perera Decl.")

7    ¶ 1; Lakin Decl. Ex. C.  Pursuant to his mother's H1-B visa, the family immigrated to the United

8    States in 2002 just before Perera turned 12 years old.  *Id.* ¶ 3; Declaration of Scott Mossman, ECF

9    No. 18-1 ("Mossman Decl.") ¶ 4.  Perera is now a lawful permanent resident.  Perera Decl. ¶ 4.

10   Perera's parents became United States citizens in 2012.  Lakin Decl. Ex. 3 (naturalization

11   certificates for Perera's parents); Mossman Decl. ¶ 5.  Perera describes his move to the United

12   States as a "culture shock."  Perera Decl. ¶ 6.  Perera felt singled out because of his cheaper

13   clothes and shoes and his language barrier.  *Id.* ¶ 7.  When his family moved to the more affluent

14   town of Lincoln, California, Perera felt that he did not fit in because he did not have the money

15   and cars that other students had.  *Id.* ¶ 8.  Perera began spending time with the wrong crowd and

16   getting into trouble.  *Id.* ¶¶ 7, 9–11.

17          On May 21, 2010, Perera was convicted in Placer County Superior Court of transportation

18   of a controlled substance in violation of California Health & Safety Code § 11379(a).  Perera Decl.

19   ¶ 12; Mossman Decl. ¶ 6.  On August 18, 2010, Perera and ten co-defendants were indicted on

20   federal controlled substances charges in the Eastern District of California.  Perera Decl. ¶ 12;

21   Mossman Decl. ¶ 6; *see United States v. Perera*, No. 2:10-cr-347-MCE (E.D. Cal., indictment ret.

22   Aug. 18, 2010).  On March 20, 2015, he pleaded guilty to a single count of conspiracy to distribute

23   and possess with intent to distribute MDMA and BZP in violation of 21 U.S.C. §§ 846 and

24   841(a)(1).  Perera Decl. ¶ 12; Mossman Decl. ¶ 7.  The court sentenced to Perera to 50 months in

25   prison with credit for time served and a term of 36 months of supervised release.  Perera Decl.

26   ¶ 12; Mossman Decl. ¶ 7.  Because Perera had already served 50 months, he was released from

27   custody and began his term of supervised release.  Perera Decl. ¶ 12.

28

United States District Court
Northern District of California

**B.   Post-Release Transformation**

After Perera's release from custody, he turned his life around.  While in custody, Perera made a promise to himself and God to not break the law again.  Perera Decl. ¶¶ 13–14.  He has no further criminal arrests or charges and successfully completed his term of supervised release without incident.  *Id.* ¶ 15; Lakin Decl. Ex. F (letter from Probation Officer).

Perera enrolled at Sierra College in fall of 2015, obtaining enough credits for two associates degrees and nearly enough credits to transfer to a four-year college.  Perera Decl. ¶ 16; Lakin Decl. Ex. K (Sierra College transcript).  Shortly after his release, Perera began working as a deli clerk at Safeway.  Perera Decl. ¶ 17.  Since then, he earned five promotions and became the store director for Safeway in Rancho Cordova, California, supervising the work of approximately 130 employees.  *Id.*  In 2020, the Safeway district manager nominated him to interview for a food industry management program at the University of Southern California, a university-based leadership program for which Safeway selects one high-performing manager per year.  Lakin Decl. Exs. G, H (letters from Safeway).  Perera aspires to obtain a bachelor's degree in marketing or management and rise through the ranks at Safeway's parent company.  Perera Decl. ¶¶ 16, 19.

Perera has also personally grown following his release from custody.  Perera has committed himself to spiritual development and devotion to his church community.  Lakin Decl. Ex. M (letter from Perera's priest).  Perera met Chloe Enriquez, a U.S. citizen, to whom he became engaged prior to ICE detaining him.  Perera Decl. ¶¶ 20–21; Lakin Decl. Ex. D (letter from Enriquez).  Perera has supported Enriquez by helping her stay on top of school work, paying bills, and assisting her during her pregnancy.  Perera Decl. ¶¶ 22–23; Lakin Decl. Ex. L (Enriquez medical letter).  Perera also purchased a home so his family would have somewhere "safe and secure" to live.  Perera Decl. ¶ 18.  As Perera says, "I now know that time is the one thing you can't get back and I have lived my life every day since being released from federal custody with that understanding."  *Id.* ¶ 15.

**C.   ICE Detains Perera**

ICE records indicate that it was aware of the criminal charges and Perera's potential deportability by 2010.  ICE was aware by at least May 14, 2010 of Perera's state conviction.

1    Mossman Decl. Ex. C (ICE Form I-213 dated April 21, 2021 confirming ICE's May 2010

2    knowledge).  A Form I-213 dated December 9, 2010 indicates that ICE was aware of his

3    incarceration at Sacramento County Jail.  *Id.* Ex. A.  Another Form I-213 dated October 10, 2017

4    indicates that ICE interviewed Perera while he was incarcerated there and that ICE's Office of

5    Chief Counsel was evaluating Perera's deportability.  *Id.* Ex. B.

6           On April 21, 2021, ICE detained Perera at 5:30 a.m. while he was on his way to work.

7    Perera Decl. ¶ 24; Mossman Decl. ¶ 8.  ICE served Perera with a Notice to Appear for Removal

8    Proceedings alleging that he is deportable due to his conviction for an aggravated felony.

9    Mossman Decl. ¶ 9.  ICE detained Perera at a private detention facility in McFarland, California

10   and denied him the opportunity to post bond for his release.  *Id.* ¶ 8.  On May 25, 2021, an

11   immigration judge conducted a hearing to determine Perera's eligibility for bond.  *Id.* ¶ 15.  The IJ

12   accepted ICE's argument that he did not have the authority to redetermine ICE's denial of bond

13   because Perera was subject to mandatory detention under 8 U.S.C. § 1226(c).  *Id.* ¶ 16.  Perera

14   submitted a release request to the San Francisco Office of ICE Enforcement and Removal

15   Operations that day.  Lakin Decl. ¶ 5.  ICE denied the request three days later.  *Id.* ¶ 7.

16          **D.    Petition and Temporary Restraining Order**

17          One week after ICE denied his release request, Perera filed this Petition and a motion for a

18   temporary restraining order seeking to require ICE to afford him a bond hearing before a neutral

19   adjudicator at which ICE would bear the burden to justify his continued detention pending

20   removal by clear and convincing evidence.  *See* Pet.; ECF No. 4.  Respondents opposed the

21   motion for a temporary restraining order.  *See* ECF No. 20.

22          On June 11, 2021, this Court granted the motion for a temporary restraining order.  *See*

23   TRO.  This Court first found that it had jurisdiction over the Petition because Perera had sued the

24   Director of the ICE Field Office that had actual authority over Perera's detention.  *Id.* at 3–4.  The

25   Court found that Perera showed a likelihood of success on the merits of his as-applied

26   constitutional challenge to his detention under § 1226(c).  The Court balanced the factors

27   enumerated in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), and found that they favored

28   Perera's entitlement to an individualized bond hearing.  *Id.* at 5–10.  The Court further found that

United States District Court
Northern District of California

United States District Court
Northern District of California

Perera would suffer irreparable harm and that the balance of equities and the public interest were in his favor. *Id.* at 10–11. The Court finally held that the Government would bear the burden at the bond hearing of proving by clear and convincing evidence that Perera posed a danger or flight risk to justify his continued detention. *Id.* at 11–12.

The parties stipulated to continue the TRO through the Court's hearing on the merits of the Petition. ECF No. 29.

### E.   Developments Since the TRO

Perera received his bond hearing on June 16, 2021. ECF No. 50-1 ("Perera Supp. Decl.") ¶ 2. The IJ ordered Perera's release on $30,000 bond with conditions; Perera posted the bond and was released. *Id.* Perera has returned to his position as a store manager at Safeway. *Id.* ¶¶ 3, 6. Perera and Enriquez were married on July 29, 2021. *Id.* ¶ 4. They welcomed a son on August 29, 2021, and Perera has been able to spend time with his loved ones, support his family, and volunteer in his community. *Id.* ¶¶ 4–7. Perera has reenrolled at Sierra College where he intends to finish his transfer credits in fall 2022. *Id.* ¶ 8.

Perera says that if the charge of removability is ultimately sustained, he intends to apply for withholding of removal to Sri Lanka pursuant to 8 U.S.C. § 1231(b)(3) and the Convention Against Torture, and deferral of removal under the Convention Against Torture, on the grounds that Sri Lankan government officials incite and acquiesce in violence against Christians. Mossman Decl. ¶ 14; Perera Decl. ¶ 31.

## II.   LEGAL STANDARD[2]

28 U.S.C. § 2241 grants federal courts the authority to issue writs of habeas corpus to individuals in custody if that custody is a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 is the proper vehicle through which to challenge the constitutionality of a non-citizen's detention without bail. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). "A person need not be physically imprisoned to be in custody under the

---

[2] Because the Court exercises jurisdiction pursuant to 28 U.S.C. § 2241 and treats this case as a habeas petition, it need not consider Perera's alternative characterization of his case as a complaint for declaratory and injunctive relief or rule on Respondents' Rule 12(b)(6) arguments.

United States District Court
Northern District of California

statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'"  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 967–68 (2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).  Declaratory and injunctive relief are proper habeas remedies.  *See id.* at 970 (enjoining ICE from re-arresting petitioner without a bond hearing); *see also N.B. v. Barr*, 2019 WL 4849175, at *7 (S.D. Cal. Oct. 1, 2019) (citing cases).

## III.  DISCUSSION

The basis of Perera's petition is that the statute under which he is detained, 28 U.S.C. § 1226(c), is unconstitutional as applied to him in his specific situation.  Pet. at 11–18.  Respondents disagree, arguing that Perera has no protectable liberty interest because § 1226(c)'s mandatory detention requirement is a constitutional part of the removal process.  Ret. at 10–18.

The Court now conducts the due process inquiry to determine if Perera has a liberty interest and, if so, if the *Mathews* factors favor him such that a post-deprivation bond hearing is required should ICE ever re-detain him pending his removal.

### A.  Liberty Interest

The government may not deprive a person of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  This protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful temporary, or permanent."  *Id.* at 693.  Detention, including that of a non-citizen, violates due process if there are not "adequate procedural protections" or "special justification[s]" sufficient to outweigh one's "'constitutionally protected interest in avoiding physical restraint.'"  *Id.* at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)); *Demore*, 538 U.S. at 516–17.

Federal immigration law authorizes the Attorney General to arrest and initially detain a non-citizen who has entered the United States and is believed to be removable.  8 U.S.C. § 1226(a).  Certain subsets of non-citizens are subject to mandatory detention.  *See id.* § 1226(c) ("The Attorney General shall take into custody any alien who [falls into one of several categories] when the alien is released, without regard to whether the alien is released on parole, supervised

release, or probation . . . ."); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 837–38 (2018).  One

of those categories of non-citizens who may not be released by the Attorney General are those

who have committed crimes of "moral turpitude."   *See* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(A)(ii)

("Any alien who at any time after admission is convicted of two or more crimes involving moral

turpitude . . . is deportable.").  The Attorney General may not release a non-citizen detained under

§ 1226(c) pending the outcome of their deportation proceedings unless release is necessary for

witness protection, which is not at issue in this case.  *See id.* § 1226(c)(2).

    "Detention during removal proceedings is a constitutionally permissible part of [the

removal] process."  *Demore*, 538 U.S. at 531.  The Supreme Court has held that § 1226(c)'s

mandatory detention provision applies even where the non-citizen subject to that detention is not

arrested and detained immediately following their release from custody on criminal charges.

*Nielsen v. Preap*, 139 S. Ct. 954, 959.  In *Preap*, the Supreme Court confronted a statutory

challenge to § 1226(c) made by a class of non-citizens who argued that § 1226(c) did not authorize

their mandatory detention without a bond hearing because they had not been detained

"immediately" following their release from custody for a § 1226(c)-eligible offense.  *Id.* at 961.

The Supreme Court rejected this argument as a matter of statutory interpretation, finding that the

non-citizens fell within § 1226(c)'s reach even if they were not arrested "immediately" after their

release from criminal custody.  *Id.* at 963–65.  The Supreme Court "emphasize[d]" that the non-

citizens' arguments had "all been statutory" and that they had not raised a head-on constitutional

challenge to § 1226(c).  *Id.* at 972.  The Court expressly stated that its decision "on the meaning of

the statutory provision does not foreclose as-applied challenges—that is, constitutional challenges

to applications of the statute as we have now read it."  *Id.*; *see also Demore*, 538 U.S. at 532

(Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of

liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized

determination as to his risk of flight and dangerousness if the continued detention became

unreasonable or unjustified.").

    In their Return to Perera's petition, Respondents contend that because § 1226(c) is a

"constitutionally permissible part of the removal process," Ret. at 10–11 (quoting *Demore*, 538

United States District Court
Northern District of California

U.S. at 531), and because the Attorney General does not have statutory authority to unilaterally release Perera, he cannot have a liberty interest that flows from the Government's failure to immediately detain him following his release from criminal custody. Ret. at 11–18. If Perera has no such liberty interest, Respondents say, then ICE's detention of him without a post-deprivation bond hearing is constitutionally permissible. *Id.* Respondents devote nearly their entire Return to this argument.

But this misses the distinction between a facial challenge to § 1226(c) and an as-applied challenge to a specific individual's detention without bond under § 1226(c). In a facial challenge, a plaintiff asserts that a statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge "challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific factual circumstance." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) (citing Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1334 (2000)); *see also Davis v. Johnson*, 359 F. Supp. 3d 831, 863 (N.D. Cal. 2019) ("A successful challenge to the facial constitutionality of a statute invalidates the statute itself, whereas a successful as-applied challenge does not render the statute itself invalid but only the particular application of the statute."). Respondents are correct that the Supreme Court has said that detention pending removal is facially constitutional. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."). A delayed decision by the Attorney General to detain a noncitizen is also permissible under § 1226(c). *Preap*, 139 S. Ct. at 972. But just because § 1226(c) does not grant the Attorney General statutory authority to release individuals detained under on his own accord does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to that detention without a bond hearing. Indeed, *Preap* expressly preserves that very type of challenge. *Preap*, 139 S. Ct. at 972 ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges . . . .").[3] It is that

---

[3] Multiple courts have reviewed as-applied challenges to § 1226(c) detention without a bond hearing. *See Romero Romero v. Wolf*, 2021 WL 254435, at *2 (N.D. Cal. Jan. 26, 2021) (granting

1   type of challenge that Perera brings in his Petition:  that § 1226(c) cannot be constitutionally

2   applied to him, in his specific situation.  It is in that context that the Court evaluates whether

3   Perera, in his circumstances, has a liberty interest.

4          The Court finds that in his specific factual circumstances, Perera has a liberty interest at

5   stake.  Perera's reliance on his freedom is compelling and goes far beyond that present in a typical

6   detention situation under § 1226(c).  Perera was released from federal custody into a period of

7   supervised release.  At the time of his release, Perera was already subject to an immigration

8   detainer but no notice of release was sent to ICE ERO.  Thus, the Government was aware that

9   Perera was eligible for detention and removal when he was released from custody, and the

10  Government knew where Perera was because he was under federal supervision.  But the

11  Government did not detain Perera at any point during his supervised release.  For over six years,

12  during his supervised release and afterwards, Perera was law-abiding and by all measures built a

13  new life.  He enrolled at Sierra College, obtaining credits for two associates degrees and nearly

14  enough credits to transfer to a four-year college.  Perera Decl. ¶ 16; Lakin Decl. Ex. K.  Perera

15  began working at Safeway, was promoted five times, became store manager, and was nominated

16  for a food management program at USC because of his strong leadership.  Perera Decl. ¶ 17;

17  Lakin Decl. Exs. G, H.  Perera is active in his church.  Lakin Decl. Ex. M.  Perera also met,

18  became engaged to, and eventually married Chloe Enriquez, with whom he now has a young child.

19  Perera Decl. ¶¶ 20–23; Lakin Decl. Ex. D.  Perera lives with his wife and son in a home he

20  purchased for his family.  Perera Decl. ¶ 18.  In the nearly six-year period in which Perera built his

21  life following his release from federal custody, he has developed an intense reliance on his

22  "[f]reedom from imprisonment—from government custody, detention, or other forms of physical

23  restraint." *Zadvydas*, 533 U.S. at 690.  That liberty interest was undermined when the

24  Government detained him in April 2021.  Thus, in his situation, Perera has a liberty interest that is

25  threatened by the Government's efforts to detain him without a bond hearing pending removal.

26

27  ——————————————

    petition for writ of habeas corpus to non-citizen detained without bond hearing under § 1226(c));
28  *Arizmendi v. Kelly*, 2018 WL 3912279, at *4 (D. Ariz. Jul. 23, 2018), *report and recommendation adopted*, 2018 WL 3872228 (D. Ariz. Aug. 15, 2018).

United States District Court
Northern District of California

In the alternative, Respondents further argue that Perera is not being deprived of any liberty interest now because he "is not in ICE custody" and has already received a bond hearing pursuant to the Court's temporary restraining order, after which he was released on bond with conditions. Ret. at 18 n.5. But as the next sentence of Respondents' argument recognizes, "ICE could re-detain him at any time." *Id.* If Perera had no liberty interest in freedom from possible re-detention by ICE such that his existing Petition would need to be denied, Perera would be forced to file a successive petition (or petitions) should ICE re-detain him. That illogical result cannot be, and Respondents only briefly defend it. Ret. at 18 n.5.

Accordingly, the Court finds that Perera's as-applied challenge to his detention without a bond hearing may proceed because Perera has a liberty interest at stake.

**B.** *Mathews* **Factors**

Because the Court has identified a liberty interest at stake, the question becomes what process Perera is due. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). *Mathews* lays out three factors courts must consider in determining the extent of the process due: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335. The Court finds, as it did in granting the temporary restraining order, that these factors clearly favor Perera.[4]

<u>Private Interest</u>. As the Court has already identified, Perera has a significant private interest in "[f]reedom from imprisonment—from government custody, detention, or other forms of

---

[4] Puzzlingly, the Return mentions *Mathews* only in a single paragraph in which Respondents argue that it does not apply because Perera's mandatory detention under § 1226(c) is constitutional. Ret. at 18. The Court rejected this very argument in granting the temporary restraining order, *see* TRO at 7 n.2, where Respondents similarly devoted only a single footnote to *Mathews*. Respondents should have addressed the *Mathews* factors on their merits rather than just dismissing their applicability.

United States District Court
Northern District of California

physical restraint." *Zadvydas*, 533 U.S. at 690.  Contrary to Respondents' argument otherwise (implicit in their discussion of whether a liberty interest exists at all), this interest is not reduced because Perera spent only a small amount of time actually in custody prior to his previous bond hearing. Ret. at 10 n.3.  "[A]ny length of detention implicates the same" fundamental liberty interest in remaining free from imprisonment. *Rejnish v. Jennings*, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020).  Additionally, the liberty interest the Court has identified does not derive from Perera's time in custody; rather, it derives from the Government's awareness that Perera was eligible for detention while on supervised release, their failure to apprehend him despite knowledge of where he was for over six years, Perera'a clean record and success in the multi-year interim period, and his significant reliance on freedom from detention.

<u>Risk of Erroneous Deprivation</u>.  The Court also finds that the risk of an erroneous deprivation of the liberty interest is significant.  In granting Perera's motion for a temporary restraining order, the Court found that, while it was not the Court that would decide whether release on bond was warranted, the record was "abound with evidence" that would support such a finding by an immigration judge.  TRO at 7–8.  The immigration judge evidently agreed when he released Perera on $30,000 bond with conditions.  Perera Supp. Decl. ¶ 2.  Perera's actions since his release on bond only further supplement that evidence.  Perera has gone back to his job in store management at Safeway.  *Id.* ¶¶ 3, 6.  Perera married his fiancée and their son was born.  *Id.* ¶ 4.  Perera is again working on finishing his transfer credits at Sierra College.  *Id.* ¶ 8.  Should Perera be re-detained by ICE pending his removal proceedings, a risk of an erroneous deprivation of Perera's rights is high without a neutral decisionmaker reviewing his evidence to determine if release on bond pending removal is warranted.

<u>Government's Interest</u>.  The Government interest in Perera's detention pending removal *without a bond hearing* is low.  While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining Perera pending removal without a bond hearing.  *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 765, 777 (N.D. Cal. 2019); *contra* Ret. at 15 (arguing that Perera is a flight risk because he is a removable and has an "incentive to abscond").  At any bond hearing, Respondents

are free to argue that Perera should not be released from custody because he is a flight risk or a danger to the community.  If at a bond hearing the immigration judge were to determine that Perera was not a danger to the community and that his appearance at any future proceedings could be secure by bond or conditions, then the government would have "no legitimate interest in detaining" him.  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  Additionally, the Government would not face any significant additional administrative burdens because it may already release other types of non-citizens on bond.  *See* 8 U.S.C. § 1226(a).  Finally, ICE's multi-year delay in pursuing custody of Perera following his release from criminal custody suggests that the Government has a low interest in detaining Perera.  This is especially true because, unlike for some other non-citizens ICE seeks out, Perera was hardly hiding from authorities.  Perera spent the first three years after his release from custody on federal supervised release in which his location could be easily determined.  Perera also bought a house, secured a job at a nationwide grocery chain, and attended community college.  These are hardly the actions of someone trying to hide from authorities.  If ICE thought Perera was detention priority, they would have had no difficulty locating him.  The Government's interest in detaining Perera without a bond hearing is thus low.

                                        *        *        *

     Thus, the Court finds that in this specific as-applied challenge, the *Mathews* factors favor Perera and that he is entitled to a post-deprivation bond hearing should ICE re-detain him pending removal.

### C.    Burden of Proof at Bond Hearing

     The only remaining issue is who bears what burden of proof at any potential bond hearing. Perera argues that Respondents should bear the burden of proof to show flight risk or dangerousness by clear and convincing evidence to justify denial of bond.  Trav. at 11–12 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).  Respondents argue that Perera should bear the burden of showing that he "is neither a danger to the community nor a flight risk," and Respondents "need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings."  *See* Ret. at 19–20 (quoting *Velasco*

*Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020)).

The Court agrees with Perera and finds *Singh* instructive.  In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond."  638 F.3d at 1203.  While the Ninth Circuit was considering the burden of proof in the context of a *Casas* hearing—held after a non-citizen has faced "prolonged detention while their petitions for review of their removal orders are pending"—the Court finds that the Ninth Circuit's reasoning applies equally here, contrary to Respondents' arguments.  Ret. at 19–20  It would be "improper to ask [Perera] to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty— is so significant."  *Id.* at 1203–04 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)); *see also Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (Government bears burden of showing by clear and convincing evidence at bond hearing that non-citizen detained pending removal proceedings was flight risk or danger to community).

**D.    Scope of Relief**

At the hearing, the Court requested that Perera submit a proposed order granting the relief he seeks through his writ.  Perera has done so, ECF Nos. 54, 58, and the Government has responded, ECF No. 55.  Perera seeks an order with the following language:

> This Court finds based on the pleadings, evidence, and arguments presented in this matter that Petitioner–Plaintiff's detention without a bond hearing pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that pre-date this Order violates the Due Process Clause of the Fifth Amendment.
>
> Accordingly, the petition for writ of habeas corpus is GRANTED and Respondents–Defendants are permanently ENJOINED from detaining Petitioner–Plaintiff, pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that pre-date this Order, for more than 7 days without a bond hearing at which the government bears the burden of justifying Petitioner–Plaintiff's detention, by clear and convincing evidence.

ECF No. 58 at 2.  While much of the Government's response focuses on the merits of the petition for writ of habeas corpus, the Government also says that any relief the Court grants should be limited to the Government's detention authority under 8 U.S.C. § 1226(c) pursuant to Perera's March 2015 drug trafficking charges.  ECF No. 55 at 2.  The Court should not, in the

United States District Court
Northern District of California

1    Government's view, limit the Government's ability to detain Perera under 8 U.S.C. § 1226(c) on

2    another basis or under a different statute, such as if Perera becomes subject to a final order of

3    removal under 8 U.S.C. § 1231(a).  *Id.*  In reply, Perera does not object to specifying that the order

4    applies only to detention under § 1226(c), but argues that it should not be limited to detention

5    under § 1226(c) based on Perera's March 2015 federal conviction.

6         The Court agrees with Perera.  The focus of Perera's Petition has been his detention

7    without a bond hearing under 8 U.S.C. § 1226(c), which compels the Attorney General to detain

8    Perera but also allows for as-applied constitutional challenges to continued detention (which the

9    Court has granted here).[5]  The Court will limit the scope of relief granted to pertain only to

10   prohibiting re-detention based on criminal convictions pre-dating this Order.  The parties have

11   presented evidence of Perera's conduct since coming to this country that is not limited to his

12   March 2015 federal drug trafficking conviction, and the Court has considered that evidence in this

13   as-applied challenge.  The relief the Court grants under § 1226(c) will accordingly encompass that

14   conduct as well.

15        As has been clear throughout these proceedings, the Court's orders have not required (and

16   will not require) the Government to afford Perera a pre-detention bond hearing or to release Perera

17   when they do detain him.  The Orders only require that the Government afford Perera a post-

18   detention bond hearing at which the Government bears the burden of justifying Perera's detention

19   by clear and convincing evidence.  If the Government believes there is an independent ground

20   under which it may detain Perera pursuant to § 1226(c) excluding any criminal conviction

21   predating this Order, then it may detain him on those grounds, afford him a bond hearing before a

22   an immigration judge, and justify his detention pending removal by clear and convincing

23   evidence.  Perera will likely present similar arguments to the immigration judge as he did when he

24   secured release on bond with conditions, and it will be up to the Government to persuade the

25   immigration judge that any new grounds for detention are supported by clear and convincing

26

27        _____

28   [5] Indeed, Perera has indicated that if his removal goes forward, he intends to pursue other legal
     methods to stay in this country, such as withholding or deferral of removal under 8 U.S.C.
     § 1231(b)(3) and the Convention Against Torture.  *See* Trav. at 5; Mossman Decl. ¶ 14.

United States District Court
Northern District of California

evidence justifying detention pending removal.

**IV.   ORDER**

The Court finds based on the pleadings, evidence, and arguments presented in this matter that Petitioner–Plaintiff's detention without a bond hearing pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that pre-date this Order violates the Due Process Clause of the Fifth Amendment.

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is GRANTED and Respondents–Defendants are permanently ENJOINED from detaining Petitioner–Plaintiff, pursuant to 8 U.S.C. § 1226(c) based on criminal convictions that pre-date this Order, for more than seven days without a bond hearing at which the Government bears the burden of justifying Petitioner–Plaintiff's detention by clear and convincing evidence.

Dated:  April 15, 2022

BETH LABSON FREEMAN
United States District Judge